## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

TIFFANY SMITH,

                    Petitioner,         :     Case No. 1:22-cv-233

     - vs -                           District Judge Matthew W. McFarland
                                      Magistrate Judge Michael R. Merz

WARDEN, Dayton Correctional
  Institution,

                                :
                Respondent.

---

## SUBSTITUTED REPORT AND RECOMMENDATIONS

---

This habeas corpus case, brought *pro se* by Petitioner Tiffany Smith under 28 U.S.C. § 2254, is before the Court for decision on the merits upon remand from the Sixth Circuit Court of Appeals. *Tiffany Smith v. Shelbie Smith, Warden*, Case No. 23-3590 (6th Cir. Dec. 14, 2023). Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 10), the Return of Writ (ECF No. 11), and the Reply (ECF No. 17).

**Litigation History**

On August 8, 2017, a Hamilton County Grand Jury indicted Smith on two counts of murder and two counts of felonious assault each with a firearm specification. (Indictment, State Court Record, ECF No. 10, Ex. 1). A jury found her guilty on all counts and specifications. *Id.*, Verdicts, Ex. 4. The trial judge denied a motion to acquit or convict on the lesser offense of voluntary manslaughter and

sentenced Petitioner to an aggregate sentence of twenty-one years to life. *Id.* Exs. 5, 6.

Represented by new counsel, Petitioner appealed to the Ohio First District Court of Appeals which affirmed the conviction and sentence. *State v. Smith*, 2020-Ohio-4976 (1st Dist. Oct. 21, 2020). Smith then appealed to the Supreme Court of Ohio which declined to exercise jurisdiction. *State v. Smith*, 162 Ohio St. 3d 1421 (2021).

On December 3, 2020, Smith filed in the First District a document she entitled "Postconviction Motion Relief—Ineffective Counsel" which the court treated as an application for reopening under Ohio R. App. P. 26(B), complaining of ineffective assistance of appellate counsel. The First District denied the Motion (*Id.* at Ex. 23) and Smith did not appeal further to the Ohio Supreme Court.

Smith filed her Petition for Writ of Habeas Corpus in this Court on April 13, 2022, pleading the following two grounds for relief:

> **GROUND ONE**: Ineffective assistance of counsel and due process
>
> **Supporting Facts**:
>
> **Issue 1:** Counsel failed to object adequately enough to an argument by the prosecution.
>
> **Issue 2:** Counsel failed to object or argue alleged discrepancies in Ms. Yohna Bryant's testimony.
>
> **Issue 3:** Counsel failed to pursue the issuance of subpoena for the original surveillance video of the murder, rather than allowing the State to admit a copy, which Petitioner claims was altered in favor of the prosecution.
>
> **Issue 4:** Counsel failed to call witnesses, specifically:
>
> (a) the instructor of the concealed-carry class she took in the past;
> (b) a mental health professional to testify about her state of mind due to past trauma and depression
> (c) an expert regarding the potential force of a full glass bottle of liquid, and
> (d) Ms. Bryant's daughter, "Cyiona", for cross-examination.

2

**Issue 5:** Counsel failed to pursue the issuance of subpoena for the original surveillance video of the murder, rather than allowing the State to admit a copy, which Petitioner claims was altered in favor of the prosecution.

**GROUND TWO**: Due Process/Judicial Misconduct

**Supporting Facts**:

**Issue 1:** The trial judge fell asleep during trial, resulting in incorrect rulings on objections.

**Issue 2:** Trial court made comments at the sentencing hearing regarding LACY KING, that painted a picture of sentiment to the jury.

(Petition, ECF No. 1).

Upon filing, the case was referred to Magistrate Judge Caroline Gentry and then transferred to the undersigned to help balance the workload in the District (ECF No. 3). The Attorney General of Ohio answered on behalf of Respondent, filing the State Court Record (ECF No. 10) and a Return (ECF No. 11). After two extensions of time, Petitioner filed her Reply (ECF No. 17). The undersigned filed a Report and Recommendations (ECF No. 19). Petitioner objected (ECF No. 21), but District Judge McFarland overruled those Objections and ordered the case dismissed (ECF Nos. 23, 23).

Petitioner then appealed. In its Order dismissing the appeal for lack of jurisdiction, the Sixth Circuit found this Court had not decided Smith's first six grounds for relief and our decision was therefore not appealable because it was not final (ECF No. 28, PageID 1773). It remanded "for consideration of Smith's unresolved grounds for relief." *Id.* at PageID 1774.

3

# Analysis

The Sixth Circuit treated Smith's Petition as supplemented by the Memorandum in Support and directed us to do the same.

> ln the memorandum in support of her habeas petition, Smith raised eight grounds for relief-the six grounds raised on direct appeal in her memorandum in support of jurisdiction to the Ohio Supreme Court plus two grounds asserting issues raised in her Rule 26(B) motion. Smith's seventh ground for relief included five ineffective-assistance subclaims: (1) her trial counsel failed to object adequately to an argument by the prosecution, (2) her trial counsel failed to argue or object to discrepancies in Yohna Bryant's testimony, (3) her trial counsel failed to pursue the issuance of a subpoena for the original surveillance video of the murder, (4) her trial counsel failed to call certain witnesses, and (5) her appellate counsel failed to raise the issues presented in her Rule 26(B) motion. Smith's eighth ground for relief included two judicial-misconduct subclaims: the trial judge (1) fell asleep during trial and (2) made comments at sentencing about the victim "that painted a picture of sentiment to the jury.

*Smith, supra*, at PageID 1772. In the interest of completeness, this Substituted Report and Recommendations deals with all the grounds for relief identified here by the Sixth Circuit.

**Ground One: Conviction upon Insufficient Evidence**

**Ground Three: Failure of the State to Prove Smith Did Not act in Self-Defense or Defense of Another**

In her first three propositions of law on appeal to the Ohio Supreme Court, Smith claimed she was convicted on insufficient evidence, against the manifest weight of the evidence, and even though the State failed to prove she did not act in self-defense or defense of another (State Court Record, ECF No. 10, Ex. 175, PageID 250). The Ohio Court of Appeals for the First District considered these claims together and decided them as follows:

## The Evidence at Trial

{¶2} At trial, the state presented evidence through testimony and a videotape of the incident. According to the evidence, Smith's daughter T.J. was standing in Joe's Drive-Thru in Lockland with a friend when a car driven by King pulled in. King's sister Yohna Bryant was in the front passenger seat and Bryant's daughter C.M. (King's niece) was in the rear seat behind Bryant.

{¶3} According to Bryant, T.J. had been bullying C.M. for years. A month earlier, T.J. and a friend had jumped C.M., and shortly after that, Bryant had informed T.J. and her older sister Shila[1] that Bryant had "put warrants out" on T.J.

{¶4} Bryant testified that T.J. approached King's car in the drive-thru, speaking angrily, so she and King began to argue with T.J. When T.J. threatened to kick King's car, King told her not to touch the car, and King and Bryant jumped out of the car to back T.J. away from it.

{¶5} Bryant testified that T.J. called Smith during this argument. According to Bryant, she knew T.J. was on the phone with her mom "[b]ecause she was on the phone saying * * * [C.M.'s] mother and aunt are up here messing with me." Bryant testified that when she heard T.J. on her phone, she yelled at T.J., "Well, go get your retarded mama." Bryant acknowledged that she later told police that King was "[c]ussing [T.J.] out like, 'Little girl, go get your mama * * * And you're not going to kick my car * * * I'll beat you up.' " After a drive-thru employee intervened, King and Bryant got back into the car, and King talked to another employee about purchasing items.

{¶6} Then, T.J.'s brother Tamiko[2] came into the drive-thru, followed shortly thereafter by Smith. According to Bryant, Smith walked into the drive-thru, approached her on the passenger side of King's car, and said, "Bitch, I'm going to kill you." Just then, T.J. reached into the rear passenger window of the car, punched C.M., and grabbed C.M.'s hair. Then C.M. jumped out of the car and started fighting T.J. Bryant and King jumped out to help C.M.

{¶7} Bryant testified that Smith began to strike King with a gun so Bryant grabbed the gun to take it away from Smith. According to Bryant, Tamiko grabbed her by the arms so that she could not do anything, and Smith "put the gun to my face at that point."

{¶8} Bryant testified that as she was being held by Tamiko, Smith was grabbing King's hair and beating her with the gun. She estimated that Smith hit King with the gun ten or 12 times. Bryant said that King was trying to get away from Smith and that King's shirt was torn off in the fight.

{¶9} Bryant said that Smith pointed the gun at her again as King walked back to the car to clean blood off of herself and to fix herself up. According to Bryant, when Tamiko let go of her, Smith was still pointing the gun at her: "[Smith] didn't say absolutely nothing. She just looked at me crazy and pointed the gun at me." Bryant said that as she and King were about to get back in the car to leave, Smith put the gun into her bra.

{¶10} Bryant testified that as she was getting into the car, she saw that C.M. was fighting T.J. and her friend in a corner of the drive-thru, so she and King headed to that corner to break up the fight. Bryant testified that she noticed that Smith had pulled the gun back out of her bra and "had it out." Bryant said that she broke up the fight, grabbed her daughter C.M., and started back to the car. According to Bryant, King saw that Bryant and C.M. were on their way back to the car, so King started towards the car as well. Bryant testified:

> All I know is when I turned around and seen my sister going towards the car, I heard and seen [Smith] pull the trigger and heard the shot. And my sister just grabbed her arm and said, "The bitch shot me, Yohna. Take me to the hospital."

{¶11} Bryant testified that until she saw a surveillance video of the incident, she did not know that as she and King went to break up the fight between C.M. and the other girls, King had grabbed a plastic bottle from a refrigerator and had struck Smith with it. Bryant testified, "I didn't even see that, I guess she went to attack [Smith] because she had her gun out."

{¶12} Bryant testified that as she frantically drove to the hospital, King lost consciousness. Bryant realized that she could not make it to the hospital, so she pulled up to the Reading police station. Police and firefighters immediately responded to attend to King, but she died as a result of her gunshot wound.

{¶13} Lockland Police Sergeant Christopher Lind testified that he received a frantic call from Joe's Drive-Thru in Lockland about someone having a gun. As he and two other officers walked out of

their station to respond to the drive-thru, they encountered a hysterical T.J. at their door, who told them, "My mom just shot somebody."

{¶14} As Smith got out of her car and walked toward the officers, she appeared to be irate. When the officers asked her if she shot somebody, Smith yelled, "Yeah, I did it, I shot someone." After Smith was taken into custody, police recovered her gun from her car and Smith handed them her gun holster, which had been under her shirt.

{¶15} Sergeant Lind testified that the drive-thru surveillance video showed that King grabbed a plastic 12-ounce soft drink bottle from a refrigerator and struck Smith with it and that Smith fired her gun, striking King. He testified that the police did not recover the bottle because the drive-thru employees had already begun to clean up the scene.

{¶16} Hamilton County Sheriff's Detective Kevin Illing testified that when he interviewed Smith, she told him that "she did not want to be hit with that bottle."

{¶17} Smith testified that T.J. called her to pick her up from the drive-thru because "[C.M.'s] mother and them keeps pulling down on me." Smith said she had been sitting in bed with a gun in a holster clipped to the front of her bra because she did not want the four-year-old child in her home to access it. Smith told T.J., "I'm on my way," and asked her adult son Tamiko to go with her.

{¶18} Smith said that she parked and intended to stay in the car, but when her son and T.J. did not immediately come outside, Smith went into the drive-thru to see what was going on. Smith testified that when she walked into the drive-thru, she asked T.J., "Which one is the mother?," and T.J. replied, "She's on the passenger side." Smith said that she walked along the passenger side of King's car, and that she was holding onto her gun, which was in the holster on her bra, because it was unstable in her loose-fitting bra.

{¶19} Smith testified that her purpose in walking up to the passenger side was to address C.M.'s mother (Bryant) to get to the bottom of the problem between their daughters so there "wouldn't be an ongoing feud." Smith also testified that she had no idea that there had been a prior incident involving T.J. and C.M., or that "there was a problem with the two girls at all." Smith said that her daughter Shila had never told her about Bryant's having put warrants out on T.J.

{¶20} According to Smith, as Bryant got out of the car, Bryant told her that T.J. had hit her daughter. Smith testified, "I had already pulled my weapon when [Bryant] first started to get out of the car[.]"

{¶21} Smith testified that C.M. jumped out of the car and on top of T.J., and that King jumped out of the driver's side and knocked T.J. to the ground. She said that King had T.J.'s hair in her hands as she banged T.J.'s head against the concrete floor. Smith said that her "only instinct was to get the adult off my daughter." Smith testified, "I'm pulling [King] with everything in me, I'm exhausted. * * * I tore two shirts and a bra off her and she still didn't stop." Smith testified that she thought T.J. was going to be killed or suffer brain damage. Smith said that she began hitting King with the gun to get King off of T.J. because, after pulling King's clothing off, she had nothing else to grab onto to get King off of T.J.

{¶22} Smith testified that she stopped hitting King for a moment because she was exhausted, but then she resumed hitting her. The altercation between King and T.J. ended when King broke away and walked over to her car. Smith testified that she was afraid that King might be getting a weapon.

{¶23} Smith testified that her son had been holding onto Bryant to keep her from attacking so she told him to let Bryant go, and she pointed the gun at Bryant and told her, "[Y]ou stop, don't do it," because she did not want Bryant to attack her. Smith testified that her warning worked because Bryant went back to the car as soon as her son let Bryant go. Both King and Bryant went to get in the car, and Smith put the gun back into her bra.

{¶24} Smith said that she turned to leave the drive-thru: "I headed on my way out of there." She explained, "To me[,] it was over. I was back pedaling trying to get out of there." Smith said she stopped at the end of the drive and glanced back and noticed that T.J. was not behind her anymore. Smith turned and saw the fight going on between T.J., T.J.'s friend, and C.M.

{¶25} Smith testified that King then ran to the refrigerator to grab something and charged at her. Smith had been to that drive-thru hundreds of times and knew that the refrigerators there contained drinks in glass bottles, plastic bottles, and aluminum cans. Smith said that King "reached up above her head and she came down and hit me twice in the face." Smith said that she was in fear for her life "[b]ecause I didn't want her to hit me with the bottle and knock me unconscious." Smith testified that she believed that King had a glass

bottle that could seriously hurt her. Smith said that she never saw the bottle that King used.

{¶26} Smith testified that after she fired the shot, "I believe I probably was in shock. I just turned and wanted to get out of there." Smith said that she got into her car and called 911 as she drove directly to the Lockland police station. Smith testified that she had a permit to carry a concealed weapon.

{¶27} The drive-thru surveillance video, which contained no audio, depicted the following sequence of events: T.J. and her friend were standing by the refrigerators when King drove into the drive-thru and stopped the car. King and her passengers then looked toward the back of the car as T.J. and her friend walked behind the car to cross the drive-thru.

{¶28} An employee approached King's open window while T.J. and her friend stood near the back of the drive-thru. King can be seen unbuckling her seat belt and opening her door. She then closed her door and she and T.J. appeared to be speaking back and forth. At one point, Bryant opened her door and got out of the car, while King appeared to continue speaking to T.J. Bryant then stood by the passenger door and appeared to speak to T.J., who stood by the rear corner of the driver's side of the car.

{¶29} T.J. then walked behind the car and stood facing the car, gesturing with her arms, as her friend stood between T.J. and the car. As T.J. walked toward the driver's side of the car, her friend placed an arm across T.J.'s chest.

{¶30} King opened her door, and she and Bryant walked toward T.J., as T.J.'s friend kept T.J. behind her and backed away. Bryant appeared to be yelling.

{¶31} An employee stepped near the girls, and the women walked back to the car and got in. The verbal altercation appeared to continue, and at one point, T.J. appeared to be holding a phone to her ear. As the confrontation continued, T.J. and Bryant appeared to speak angrily to each other as employees stood between them.

{¶32} King appeared to kick off a sandal and take off a bracelet. At this point, Bryant got back into the car, and an employee began to move King toward her driver's door. King and T.J. were still speaking to each other as King got into the car.

{¶33} Then T.J. walked out of the drive-thru while she continued to gesture. Bryant and King were in their car with the doors closed when T.J. walked back into the drive-thru.

{¶34} Then Tamiko entered the drive-thru. T.J. then walked quickly toward the rear passenger side of King's car, and Smith entered the drive-thru moments later.

{¶35} As T.J. walked to the rear passenger window, Bryant's door began to open, but it was quickly closed by an employee. Smith then approached the passenger side of the car, as T.J. moved behind the car. T.J. reached into the rear passenger window and appeared to strike C.M.

{¶36} Then Bryant and King got out of the car, and C.M. started to climb out of the rear passenger window, while T.J.'s friend pulled T.J. back a few feet from the car.

{¶37} As Bryant stood near her door, King ran around the back of the car and appeared to strike T.J. T.J.'s friend then appeared to strike King, and Smith appeared to strike someone. At this point, the fight continued with Bryant grabbing Smith's right arm, which appeared to be swinging at someone. Then Tamiko grabbed Bryant from behind and held her.

{¶38} C.M. and T.J.'s friend were pulling each other, fighting, toward the rear of the drive-thru. At the same time, Smith pulled King by the shirt, which came partially off as King continued to fight T.J. Smith then struck King with the gun.

{¶39} Smith stepped back for a moment as King and T.J. continued to fight. Then Smith continued to strike King with the gun. King was holding T.J. by the hair during this time. An employee tried to get between King and T.J., as another employee moved Smith back.

{¶40} King then went back to her car, as Tamiko continued to hold onto Bryant near the back of the car. Smith then pointed the gun at Bryant, as T.J. walked to the rear of the drive-thru toward the fight that was still going on between C.M. and T.J.'s friend.

{¶41} Smith put her gun back in her shirt as Bryant walked toward the car. As Bryant opened her car door, she appeared to see C.M. fighting in the rear of the drive-thru.

{¶42} Bryant, Smith, and King all walked toward the rear of the drive-thru toward the girls' fight. King opened a refrigerator and

then approached Smith. As she did, she struck Smith with an object twice. King then bent forward and stumbled away from Smith toward the car, as Smith stepped backward out of the drive-thru.

### *The Verdicts and Sentence*

{¶43} At the conclusion of the trial, the jury returned guilty verdicts finding Smith guilty of two counts of murder, in violation of R.C. 2903.02(A) and 2903.02(B), two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), with accompanying one-year and three-year firearm specifications for each offense.

{¶44} The trial court merged the murder counts and sentenced Smith to 15 years to life in prison for murder in violation of R.C. 2903.02(A). The court merged the felonious-assault counts and sentenced Smith to three years in prison for felonious assault in violation of R.C. 2903.11(A)(1). The court ordered the prison terms for murder and felonious assault to be served concurrently. The court merged the one-year and three-year firearm specifications for each underlying offense and imposed sentence on both of the three-year firearm specifications. The court ordered these three-year firearm specifications to be served consecutively to the underlying offenses and to each other, for an aggregate prison term of 21 years to life. Smith now appeals.

### *Weight and Sufficiency*

{¶45} In her first, second, and third assignments of error, Smith argues that her convictions were not supported by the weight and sufficiency of the evidence because she acted in self-defense and in defense of another. While Smith does not deny that she shot and pistol-whipped King, she contends that she acted in self-defense and in defense of her daughter T.J. Smith argues the three assignments of error together.

{¶46} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. McFarland*, Slip Opinion No. 2020-Ohio-3343, ¶ 24, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and

determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

### Self-Defense and Defense of Another

{¶47} Smith argues that the state failed to prove beyond a reasonable doubt that she did not act in self-defense when she shot King and that she did not act in defense of another (T.J.) when she struck King with the gun.

{¶48} The elements of self-defense in the use of deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such a danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). The elements of self-defense are cumulative, so a defendant's self-defense claim fails if any one of the elements is not present. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 73; *State v. Edwards*, 1st Dist. Hamilton No. C-110773, 2013-Ohio-239, ¶ 9.

{¶49} Under R.C. 2901.05, if there is evidence presented at trial that tends to support that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another. R.C. 2901.05(B)(1). Once the initial showing is made, the burden of persuasion requires the state to disprove at least one of the elements of self-defense (or defense of another) beyond a reasonable doubt. *State v. Petway*, 2020-Ohio-3848, ―― N.E.3d ――, ¶ 55 (3d Dist.); *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶50} In this case, the state does not contest that there was evidence tending to show that Smith acted in self-defense or in defense of another. Therefore, the state was required to disprove self-defense involving deadly force by proving beyond a reasonable doubt that the defendant (1) was at fault in creating the situation giving rise to the affray; or (2) did not have a bona fide belief that she was in imminent danger of death or great bodily harm for which the use of deadly force was her only means of escape, or (3) violated a duty to retreat or avoid the danger. *Carney* at ¶ 31.

{¶51} The state need only disprove one of the elements of self-defense beyond a reasonable doubt. *State v. Williams*, 9th Dist.

Summit No. 29444, 2020-Ohio-3269, ¶ 10. Therefore, in reviewing a sufficiency-of-the-evidence challenge involving self-defense, we must view the evidence in a light most favorable to the state, and determine whether any rational trier of fact could have found that the state disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Davis*, 10th Dist. Franklin No. 19AP-521, 2020-Ohio-4202, ¶ 27.

### Self-Defense: Murder

{¶52} With respect to the murder offense, Smith argues that the state failed to disprove any of the elements of self-defense beyond a reasonable doubt.

### a. Fault in Creating the Situation

{¶53} Ohio courts have recognized that a person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense. *Petway*, 2020-Ohio-3848, —— N.E.3d ——, at ¶ 76 (defendant angrily confronted the victim), citing *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002-Ohio-415 (defendant followed the victim to provoke an altercation); *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶ 15 (defendant "willingly advanced toward a volatile situation").

{¶54} Smith asserts that she was not at fault in creating the situation that led to the murder because King attacked her with the bottle. The question before us is whether, when viewing the evidence in the light most favorable to the state, the jury could reasonably have found that Smith was at fault for creating the situation leading to the murder. We find that it could.

{¶55} For example, the jury could have concluded that Smith entered the drive-thru with a gun, escalating a situation that had already been defused. Then, after Smith pistol-whipped King, and King retreated to her car, the jury could have found that Smith's pointing her gun at Bryant and threatening her showed Smith was at fault in creating the situation leading to the throwing of the bottle. And a jury could have found that Smith pulled the gun back out before she was struck with the bottle, thus being at fault in creating the situation.

### b. Bona Fide Belief of Imminent Danger

{¶56} The second element of self-defense involves both objective and subjective tests. *State v. Vanover*, 1st Dist. Hamilton No. C-

990104, 2000 WL 1434161, *3 (Sept. 29, 2000), quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). A defendant's belief that she was in immediate danger of death or great bodily harm must be objectively reasonable, and the defendant must have an honest belief that she was in such danger. *Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, at ¶ 29, citing *Thomas* at 331. If the objective standard is met, "the jury must determine if, subjectively, this particular defendant had an *honest* belief that she was in immediate danger." *Thomas* at 331. The state may disprove self-defense by demonstrating that Smith's belief was not objectively reasonable or that she did not have an honest subjective belief that she faced imminent death or great bodily harm. *See Williams* at ¶ 29.

{¶57} Smith argues on appeal that she had reasonable grounds to believe that she was in imminent danger of death "[b]ased on the fact that King would not stop beating [Smith's] daughter even after [King's] shirt and bra were torn off, * * * and then went back to the car and cooler to grab an object to strike Ms. Smith and fight her, and did so[.]" However, on cross-examination, Smith admitted that when King approached her, she pulled the gun back out. Although Smith said she did not know she had been struck with a plastic bottle, Detective Illing testified that he observed no injuries of any sort on Smith, and Smith admitted that she did not have a scar on her head from being hit with the bottle. When shown the video of the incident, Smith admitted that after King dropped the bottle, it fell to the ground without breaking, and that T.J. had grabbed the same bottle and thrown it, and that the bottle had again struck the ground without breaking. Viewing the evidence in the light most favorable to the prosecution, we find that the jury could reasonably conclude that once Smith was hit with the plastic bottle, she knew it was plastic, and she knew that a plastic bottle was not capable of inflicting death or great bodily harm, so her belief was not objectively reasonable. Even if Smith's belief that she was in danger of death or great bodily harm was objectively reasonable, the jury could have rejected her testimony and concluded that Smith knew she had been struck with a plastic bottle.

### c. *Duty to Retreat*

{¶58} With respect to the duty to retreat, "in most cases, 'a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation.'" *State v. Morgan*, 1st Dist. Hamilton No. C-160495, 2017-Ohio-7489, ¶ 36, quoting *Thomas*, 77 Ohio St.3d at 326, 673 N.E.2d 1339. The question before us is whether, after reviewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found that Smith violated a duty to retreat. We find that it could.

{¶59} For example, Bryant testified that there had been nothing to block Smith and T.J. from leaving the drive-thru. According to Bryant, Smith did not try to get T.J. to leave or to stop fighting. Instead, Smith "encouraged the situation. * * * She just came brandishing her gun just ready to fight[.]"

{¶60} And Smith acknowledged that when she first entered the drive-thru, Bryant and King were in their car trying to make a purchase yet she approached the car with her hand on her gun. Smith admitted that she could have grabbed T.J., who was standing behind the car, and taken her out of the drive-thru as soon as she arrived. However, she admitted, "at that point, I was not trying to get her out."

{¶61} Smith also acknowledged that after she pistol-whipped King, King and Bryant were going back to the car, and T.J. was away from them, so Smith could have left. Considering all this testimony, the jury reasonably could have found that Smith violated her duty to retreat at any one of these points.

### Self-Defense Conclusion

{¶62} Therefore, with respect to Smith's self-defense argument as to the murder offense, the jury could have reasonably found that Smith was at fault in creating the situation that led to the affray, that she did not have a bona fide belief of imminent danger of death or great bodily harm, or that she violated a duty to retreat. Viewing the evidence in a light most favorable to the prosecution, we hold that the jury could reasonably have found that the state disproved at least one of the elements of self-defense with respect to the murder charge beyond a reasonable doubt.

### Defense of Another: Felonious Assault

{¶63} With respect to the felonious-assault offense, Smith asserts that the state failed to prove beyond a reasonable doubt that she did not act in defense of T.J. when she pistol-whipped King.

{¶64} Defense of another is a variation of self-defense. *State v. Moss*, 10th Dist. Franklin No. 05AP-610, 2006-Ohio-1647, ¶ 13. "If a person in good faith and upon reasonable grounds believes that a family member is in imminent danger of death or serious bodily harm, such person may use reasonably necessary force to defend the

family member to the same extent as the person would be entitled to use force in self-defense." *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990), paragraph one of the syllabus. A person who intervenes on behalf of another "stands in the shoes of the person whom he is aiding, and if the person aided is the one at fault, then the intervenor is not justified in his use of force[.]" *State v. Wenger*, 58 Ohio St.2d 336, 340, 390 N.E.2d 801 (1979).

### a. *Fault in Creating the Situation*

{¶65} Smith argues that T.J. was not at fault in creating the situation because King threatened to hurt T.J. if she kicked King's car and took off her jewelry to prepare for a fight. However, there is evidence that, if believed, by the jury, would support a finding that T.J. was at fault in creating the situation. For example, the jury could have concluded that the video of the incident confirms Bryant's testimony that it was T.J. who initiated the physical confrontation. T.J. can be seen on the video reaching into the car to hit C.M. In addition, the jury could have found that Smith admitted that she knew T.J. had started the fight because as Bryant got out of her car, Bryant had told her that T.J. had struck C.M.

{¶66} The jury also could have reasonably believed Bryant's testimony that, before Smith walked into the drive-thru, "[w]e had no intentions of making anything physical, because [T.J.'s] underage and we know we're grown." Bryant testified that T.J. had not touched anyone until Smith arrived: "It's like [T.J.] got a ball of courage when her mama walked up with the gun." The jury was free to believe Bryant who said that the first physical act that occurred was when T.J. hit C.M. Therefore, the jury could reasonably have found that T.J. initiated the fight that led to Smith's committing felonious assault upon King.

### b. *Bona Fide Belief of Imminent Danger*

{¶67} Smith argues that she had reasonable grounds to believe and an honest belief that T.J. was in imminent danger of death or great bodily harm because King knocked T.J. to the ground and beat T.J.'s head on the concrete. However, there is evidence, if believed by the jury, that Smith did not have such a belief. For example, Smith admitted that after the shooting, she did not notice whether T.J. had any injuries to her face, and Sergeant Lind and Officer Jeremy Ohl testified that T.J. had no visible injuries. A jury could have determined after watching the video and weighing the testimony that Smith did not have reasonable grounds to believe, or a subjective

belief, that T.J. was in imminent danger of death or great bodily harm. *See Thomas*, 77 Ohio St.3d at 331, 673 N.E.2d 1339.

### c. *Duty to Retreat*

{¶68} A jury could also have concluded that T.J. violated a duty to retreat. For example, Smith testified that T.J. had opportunities to retreat from the drive-thru even before Smith's arrival. Smith admitted as she watched the video that T.J. continued to provoke (looked "like she's fussing") King and Bryant as they sat in the car ordering items from an employee. And, according to Smith, before Tamiko entered the drive-thru, T.J. had actually walked out of the drive-thru and then re-entered it. A jury could have found that T.J. violated her duty to retreat by going back in.

{¶69} Smith also acknowledged that she and T.J. could have left the drive-thru upon Smith's arrival. And even after T.J. reached into the car to strike C.M., the video shows that as C.M. was getting out of the car, T.J.'s friend was pulling T.J. away from the car. In addition, the jury could have concluded that after King broke away from T.J., T.J. could have left the drive-thru instead of going to help her friend fight C.M. The jury could have found any of these to have been a violation of T.J.'s duty to retreat.

### *Defense-of-Another Conclusion*

{¶70} Therefore, with respect to Smith's defense-of-another argument as to the felonious-assault offense, the jury could have reasonably found that T.J. was at fault in creating the situation that led to the affray, that Smith did not have a bona fide belief of imminent danger of death or great bodily harm for T.J., or that she and T.J. violated a duty to retreat. Viewing the evidence in a light most favorable to the prosecution, we hold that the jury could reasonably have found that the state disproved at least one of the elements of self-defense with respect to the felonious-assault charge.

### *Sufficiency and Weight Conclusion*

{¶71} Because the jury could have reasonably found that the state proved beyond a reasonable doubt that Smith did not act in self-defense or in defense of another, Smith's convictions were supported by sufficient evidence. Moreover, Smith's convictions were not against the manifest weight of the evidence. Consequently, we overrule the first, second, and third assignments of error.

*State v. Smith, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Smith's First and Third Grounds for Relief present constitutional claims. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

19

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

The First District's decision is neither contrary to nor an objectively unreasonable application of *Jackson*; it relies on *Jenks*, in which the Ohio Supreme Court expressly acknowledged applicability of the *Jackson* standard in Ohio. Smith does not contest that the decision applies the legally correct standard under *Jackson*. Instead, she asserts the decision violates 28 U.S.C. § 2254(d)(2) by reaching a decision based on an unreasonable determination of the facts (Reply, ECF No. 17, PageID 1665). She complains that the First District weighed all the evidence against her. But that is what an appellate court is required to do in evaluating a sufficiency of the evidence claim.

Because the First District's decision is a reasonable application of *Jackson*, Petitioner's First and Third Grounds for Relief are without merit and should be dismissed.

20

**Ground Two:  Conviction Against the Manifest Weight of the Evidence**

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Ground Two should therefore be dismissed.

**Ground Four:  Ineffective Assistance of Trial Counsel**

In her Fourth Ground for Relief, Smith asserts she received ineffective assistance of trial counsel when her trial attorney failed to hire a crime scene reconstruction expert and failed to argue she should have been convicted of voluntary manslaughter in the alternative (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 10, Ex. 17, PageID 250).

Smith presented this claim as her Fourth Assignment of Error on appeal and the First District decided it as follows:

> {¶72} In her fourth assignment of error, Smith argues that she was denied the effective assistance of trial counsel because counsel failed to engage a crime scene reconstruction expert and failed to argue in the alternative for voluntary manslaughter.
>
> {¶73} To prevail on an ineffective-assistance claim, an appellant must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). In reviewing defense counsel's performance, we must remain highly deferential. *Strickland* at 689. We must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. An appellant's demonstration that counsel's performance was deficient does not warrant the reversal of a conviction if counsel's error had

no effect on the judgment. *Id.* at 691; *Bradley* at 142. The appellant must affirmatively demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland* at 693-694; *Bradley* at 143.

{¶74} First, Smith argues that she was prejudiced by defense counsel's failure to engage a crime scene reconstruction expert to demonstrate the sequence of events leading up to the shooting. Generally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy. *State v. Durgan*, 1st Dist. Hamilton No. C-170148, 2018-Ohio-2310, ¶ 43.

{¶75} Nothing in the record indicates what kind of testimony a crime scene reconstruction expert could have provided, so resolving this issue in Smith's favor would be purely speculative. *See State v. Madrigal*, 87 Ohio St.3d 378, 390, 721 N.E.2d 52 (2000); *State v. See*, 1st Dist. Hamilton Nos. C-190251 and C-190252, 2020-Ohio-2923, ¶ 63. Because Smith cannot demonstrate that the outcome of the proceedings would have been different but for counsel's failure to hire such an expert, we cannot say that counsel was ineffective for failing to engage a crime-scene reconstruction expert. *See State v. McHenry*, 1st Dist. Hamilton No. C-170671, 2018-Ohio-3383, ¶ 25.

{¶76} Next, Smith argues that defense counsel should have argued to the jury in the alternative at trial that if the jury rejected her claim of self-defense, the jury should consider that she committed voluntary manslaughter, rather than murder.[3]

{¶77} Voluntary manslaughter is defined in R.C. 2903.03(A), which provides:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.

Voluntary manslaughter is an inferior-degree offense of murder because its elements are contained within the offense of murder, with the addition of one or more mitigating elements. *State v. Webster*, 1st Dist. Hamilton No. C-130700, 2014-Ohio-5647, ¶ 15, citing *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992).

22

{¶78} This court stated in *State v. Levett*, 1st Dist. Hamilton No. C-040537, 2006-Ohio-2222, ¶ 29:

> [E]vidence supporting the privilege of self-defense–that the defendant feared for his and others' personal safety–does not necessarily constitute sudden passion or a fit of rage as contemplated by the voluntary-manslaughter statute. While self-defense requires a showing of fear, voluntary manslaughter requires a showing of rage, with emotions of "anger, hatred, jealously, and/or furious resentment." The Ohio Supreme Court has specifically held that "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage."

> (Citations omitted.) In other words, self-defense requires a showing of fear for one's safety or for another's safety, whereas voluntary manslaughter requires a showing of rage or similar emotion. *See id.*; *State v. Collins*, 10th Dist. Franklin No. 19AP-373, 2020-Ohio-3126, ¶ 51.

> {¶79} Here, voluntary manslaughter would have been at odds with Smith's claim that she shot King in self-defense out of fear for her safety and for her daughter's safety. The decision by defense counsel to seek acquittal rather than inviting conviction on an inferior-degree offense was a matter of trial strategy. Therefore, we hold that counsel was not ineffective for failing to argue for voluntary manslaughter. We overrule the fourth assignment of error.

*State v. Smith, supra*.

To prevail on her Fourth Ground for Relief, Smith must show that the First District's decision on this claim is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. The First District identified and relied on the controlling Supreme Court decision, *Strickland v. Washington,* 466 U.S. 668 (1984).

As to her first sub-claim about a crime scene reconstruction expert, the First District decided Smith failed on the second prong of *Strickland*: she failed to show what a crime scene reconstruction expert would have testified to and thus failed to show prejudice from the omission.[1]

---

[1] Smith could have presented such evidence in a petition for post-conviction relief under Ohio Revised Code § 2953.21

As to her second sub-claim about a possible argument for voluntary manslaughter, the First District decided this sub-claim on the first prong of *Strickland*: it was not defective performance to fail to make this argument because it would have been inconsistent with her self-defense and defense of another defenses.

Petitioner's Fourth Ground for Relief is therefore without merit and should be dismissed.


## Ground Five:  Abuse of Discretion in Admission of Evidence

In her Fifth Ground for Relief, Smith asserts the trial judge abused his discretion by admitting prejudicial opinion testimony of a police officer.  A claim of abuse of discretion by a state court judge is not sufficient to state a constitutional violation.  *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).  Ground Five should therefore be dismissed.


## Ground Six:  Improper Sentences on Firearm Specifications

In her Sixth Ground for Relief, Smith argues she should not have been sentenced on both firearm specifications of which the jury convicted her.  She raised this claim as her sixth assignment of error on direct appeal as an error in the interpretation of Ohio sentencing law and the First District decided it against her.  The claim presents an argument of Ohio law and this Court is not authorized to consider asserted errors of state law.  Ground Six should be dismissed.

---

but never filed such a petition.  Her application under Ohio R. App. P. 26(B) was limited by Ohio law to claims of ineffective assistance of appellate counsel. *State v. Murnahan*, 63 Ohio St. 3d 60 (1992).

**Ground Seven:  Ineffective Assistance of Counsel**

In her Seventh Ground for Relief, Petitioner asserts she was deprived of the effective assistance of counsel in four ways by her trial counsel and again by her appellate counsel in failing to raise these claims of ineffective assistance of trial counsel.

As the Sixth Circuit panel pointed out, the undersigned had recommended dismissal of this claim as procedurally defaulted:

> But it is plain Smith has not presented to this Court the ineffective assistance of trial counsel claims she submitted to the First District. Her claims here – failure to adequately object to a prosecution argument, failure to argue discrepancies in Yohna Bryant's testimony, failure to object to admission of a copy of the surveillance video, and failure to call as witnesses the instructor of her concealed-carry class, a mental health expert about the effect on her mind of trauma and depression, and failure to call Cyiona on cross – are entirely new. They were never submitted to any Ohio court for evaluation.

(Report and Recommendations, ECF No. 19, PageID 1962).  The Report noted that Smith claimed she was never sent a copy of the First District's denial of her 26(B) Application.  Assuming the truth of that assertion, for which there is no record proof except Petitioner's assertion, that failure would only excuse her failure to appeal to the Supreme Court of Ohio and not her failure ever to present these claims to the Ohio courts. *Id.* at PageID 1693-94.  For purposes of this Report, the Magistrate Judge assumes the truth of Petitioner's allegation and makes no finding of procedural default as to appeal to the Ohio Supreme Court from denial of the 26(B) Application,

In her Objections, Petitioner claimed that she had presented these ineffective assistance of **trial** counsel claims in her 26(B) Application (ECF No. 21, PageID 1737).  Petitioner labeled that filing as a Petition for Postconviction Relief made under Ohio R. App. P. 26(B)(State Court Record, ECF No. 10, Ex. 20).  She asserted that it was timely under the rules for filing a petition

for post-conviction relief under Ohio Revised Code § 2953.21. *Id.* at PageID 306.

In deciding the 26(B) Application, the First District decided it was timely under App. R. 26(B) and that Smith's sworn statement satisfied the requirements of that Rule to state omitted assignments of error (Decision, State Court Record, ECF No. 10, Ex. 23, PageID 464).  But the court denied relief.  As to the claims supported by evidence that was not in the record, it held:

> **Outside evidence.** In her application, Smith asserts that appellate counsel was ineffective in failing to raise on appeal various instances of trial counsel's ineffectiveness. Trial counsel, Smith contends, was ineffective in not objecting to the assistant prosecuting attorney's "fabrication" that the bottle used by King to strike Smith had been plastic, not calling as a witness Smith's concealed carry instructor concerning his advice that she always carry her gun, not presenting expert opinion testimony concerning Smith's mental state when she shot King, and not impeaching the trial testimony of King's sister with testimony by the sister's daughter and the daughter's statement to police. Smith also asserts that appellate counsel was ineffective in failing to challenge the admission into evidence of surveillance video that, Smith insists, had been "altered to the Prosecution's advantage," along with trial counsel's ineffectiveness in not requesting that the "original" video be shown. And Smith contends that appellate counsel was ineffective in failing to challenge unspecified rulings on objections that were "unjust" because the judge had slept through parts of the trial.
>
> These proposed challenges depend for their resolution upon evidence outside the trial record. A postconviction petition is, therefore, the appropriate vehicle for advancing them. See *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Accordingly, Smith's appellate counsel was not ineffective in failing to assign those matters as error in the direct appeal.

(Entry, State Court Record, ECF No. 10, Ex. 23, PageID 465).  The First District thus refers to a fundamental distinction in Ohio law in the litigation of claimed constitutional errors.  *Perry* holds that constitutional claims which can be decided on the direct appeal record must be brought in that proceeding or be barred by *res judicata*.  The Sixth Circuit has repeatedly held that *Perry* states an

26

adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). It was therefore not ineffective assistance of appellate counsel to fail to raise these claims on direct appeal because they required evidence outside the direct appeal record.

On the other hand, constitutional claims supported by evidence outside the record can be raised in a petition for post-conviction relief under Ohio Revised Code § 2953.21. But Smith never submitted claims under Ohio Revised Code § 2953.21 supported by evidence. Instead she claimed her appellate attorney was ineffective for not raising those claims. But a claim of ineffective assistance of appellate counsel does not present the underlying ineffective assistance of trial counsel claim for decision on the merits. An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). "The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id.*

Smith also raised in her 26(B) Application claims that her appellate attorney was ineffective for failure to raise a number of claims of ineffective assistance of trial counsel. The First District decided those claims as follows:

**Ineffective assistance of trial counsel**. Smith further contends that appellate counsel was ineffective in failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the trial testimony of King's sister with her own statement to police and in failing to communicate a plea offer, or to "approach" the state about a plea bargain, to the "lesser charge of Manslaughter." These claims require Smith to demonstrate that her trial counsel's performance with respect to these matters fell below an objective standard of reasonableness, and that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." *State v. Powell,* 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (1st Dist.1993), citing *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), and *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 80 L.Ed.2d 674.

The record demonstrates no deficiency in trial counsel's performance in either respect. Defense counsel made extensive use of King's sister's statement to police when cross-examining her at trial. And "the first thing" the trial court did before the trial began, with the express purpose of preempting a claim that counsel had not communicated a plea offer, was to personally address Smith and her counsel and ask, "[Y]ou didn't want to plead to anything[,] * ** to take manslaughter or make any deals that were offered?" The assistant prosecuting attorney confirmed that no "deals were officially offered" and explained that the state had waited "to see if [the defense] wanted to try to plead it out, and every time we were informed that they [did] not." Defense counsel confirmed, "That's correct. * * * We maintain our not guilty and [there is] no plea we can work through. We're going to trial."

Because the record does not demonstrate these alleged deficiencies in trial counsel's performance, the proposed challenges to trial counsel's effectiveness would not have presented a reasonable probability of success had they been assigned as error on appeal. Therefore, appellate counsel was not ineffectiveness [sic] in not presenting those challenges on appeal.

(Entry, State Court Record, ECF No. 10, Ex. 23, PageID 465-66).

This decision of the First District is entitled to deference under 28 U.S.C. § 2254(d)(1) because it is a reasonable application of *Strickland*. It is not deficient performance for a defense attorney to fail to pursue a plea agreement when his client insists on trying the case and Smith has

not shown what more could have reasonably been done with cross-examining her sister. Because these two ineffective assistance of trial counsel claims were unlikely to prevail, it was not ineffective assistance of appellate counsel to fail to raise them.

Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, citing *Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

Smith's Seventh Ground for Relief should therefore be dismissed with prejudice.


**Ground Eight: Judicial Misconduct**


In her Eighth Ground for Relief, Smith claims her conviction is unconstitutional because of two incidents of judicial misconduct, to wit, (1) the judge's erroneous rulings on various objections because he fell asleep and (2) the judge's comments at sentencing that "painted a picture of sentiment to the jury."

Neither of these claims was raised on direct appeal (See Amended Brief, State Court Record, ECF No. 10, Ex. 11). Both the judge's rulings on various objections and his comments at sentencing would have been of record. Because they were not raised on direct appeal, they are procedurally defaulted under *State v. Perry, supra.* Procedural default by failure to raise a claim on direct appeal can be excused if it is the result of ineffective assistance of appellate counsel, but that claim of ineffective assistance of appellate counsel must first be submitted to the state courts and upheld by them. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

In her 26(B) Application, Smith claims the trial judge repeatedly fell asleep which she says resulted in some rulings on objections that were unjust and that he should have recused himself (26(B) Application, State Court Record, ECF No. 10, Ex. 20, PageID 310). She provides no record reference to any observations of the judge's falling asleep. Nor does she indicate any attempt to have Judge Ruhlman recuse himself or to have him disqualified. In ruling on Smith's claims of judicial misconduct in deciding her 26(B) Application, the First District wrote:

> Nor does the record support Smith's allegations of judicial bias and misconduct. At sentencing, the trial court expressed dismay over the actions of Smith and King. The court said, "I actually talk to the videotape every time I watch it," asking Smith, "[W]hy didn't you just turn around and go home," and telling King, "[D]rive away, don't go back, don't fight, don't get out of the car." The trial court's comments, made after the jury had returned its verdicts, were not demonstrably prejudicial. And in their content, they did not demonstrate judicial bias against Smith.

(Entry, State Court Record, ECF No. 10, Ex. 23, PageID 467). Because the comments sympathetic to the victim were not made in the presence of the jury, they cannot have influenced its verdict. Moreover they do not display judicial bias: they were made after the judge had heard all of the evidence along with the jury and evince his sense of the tragedy that occurred. Bias such as will disqualify a judge must arise from extrajudicial sources. *United States v. Sammons,* 918 F.2d 592,

598 (6ᵗʰ Cir. 1990); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1250 (6ᵗʰ Cir. 1989). That is, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Youn v. Track, Inc.,* 324 F.3d 409, 423 (6ᵗʰ Cir. 2003), *citing Grinnell, supra; Bradley v. Milliken,* 620 F.2d 1143, 1157 (6ᵗʰ Cir. 1980), *citing Grinnell, supra*; *Woodruff v. Tomlin*, 593 F.2d 33, 44 (6ᵗʰ Cir. 1979) (citation omitted).

Smith's Eighth Ground for Relief is without merit and should therefore be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

December 18, 2023.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's

objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge